In the matter of Heeney.

The court of chancery has the power, out of the surplus income of the estate of a lunatic, to provide for the support of persons not his next of kin, and whom the lunatic is under no legal obligation to support; where it satisfactorily appears to the chancellor that the lunatic himself would have provided for the support of such persons, had he been of sound mind.

The court may also make an allowance, out of the income of a lunatic's estate, for the education of persons whom he had adopted as children, while he was in a sound state of mind.

And the committee of the lunatic may be authorized to provide for the keeping up of the lunatic's family establishment, with the same number of domestics as had been customary previous to the lunacy, and to expend for that purpose, annually, an amount not exceeding that which had been annually expended by the lunatic himself before his lunacy.

The committee may also be authorized, by the court, to place at the lunatic's disposal so long as he is competent to judge of the claims of applicants, small sums of money for purposes of charity.

And the court may also authorize the committee to pay for the support of the institutions of religion, in the church where the lunatic and his family have been accustomed to worship, such sums from time to time as the lunatic may desire him to pay for that purpose, not exceeding the amount which the lunatic had been in the habit of paying annually, before his faculties became impaired.

But the committee will not be allowed personally to expend any part of the estate of the

In the matter of Heeney.

lunatic for general charity, or objects of benevolence, or of piety, for which the lunatic himself had not been in the habit of contributing specifically and regularly, while he was competent to manage his own affairs.

THIS was an application by the committee of Cornelius Heeney, who in consequence of old age and infirmity had been found to be of unsound mind, for instructions in certain particulars relating to the support of the lunatic and the support of his household, and the management of his estate.

From the petition of the committee, among other things stated therein, the following facts appeared : The annual income of the estate, after payment for repairs, insurance and taxes, amounted to about $5700. Mr. Heeney was a bachelor, but had been a housekeeper for many years, living upon a part of his own property ; and the expenses of his establishment, for about thirteen years before the issuing of the commission against him, had been about $2000 per annum. In addition to this expenditure, which included the board and clothing of two young ladies whom he had adopted, he had sent those young ladies to a boarding school, and had paid the expenses of their education. One of them had finished her education and returned to his house as her home, and the other still remained at school to complete her education. He had formerly had three sisters for whose support he provided. And one of them, who was still living, he had supported for the last forty years ; allowing her $250 a year, payable quarterly, in addition to her clothing and physician's bills, and occasionally making her further allowances when her necessities required them. He had also for several years maintained three aged ladies, whom he had sent for to Europe in their younger days, and supported in his house until they were married, and after the deaths of their husbands he paid about $100 a year for the rent of a house for them, and allowed them the further sum of $4 a week for their other expenses. And he continued such support down to the time when he was found to be of unsound mind so as to be incapable of managing his own affairs. He was also in the habit of spending the whole of the residue of his income in acts of benevolence and charity and piety. There were two notes of which he was

In the matter of Heeney.

the drawer, and three on which he was the endorser, outstanding
and unpaid.   The committee stated upon his own knowledge,
that the two notes of which Heeney was drawer, were given to
raise money for himself, which was applied to the payment of as-
sessments on his property.   One of the notes endorsed by him was
supposed to have been given to pay for the education of the two
young ladies adopted by and living with him ; and the other two
did not appear to have been endorsed by him for his own benefit,
or for any valuable consideration.   All these notes and endorse-
ments were overreached by the inquisition.   Several suits were
pending against Mr. Heeney at the time of finding the inquisi-
tion, and one suit in his favor ; and he was also threatened
with suits upon the endorsements ; as to all of which suits and
matters the committee stated the facts so far as he had been
able to ascertain them; and asked the direction of the court.

O. L. Barbour, for the petitioner.

THE CHANCELLOR.   In the case of the late Dr. Willough-
by, after a full examination of the subject, I came to the con-
clusion that the court of chancery had the power, out of the sur-
plus income of the estate of a lunatic, to provide for the support
of one who was not his next of kin, and whom the lunatic was
under no legal obligation to support, where the chancellor was
satisfied, beyond all reasonable doubt, that the lunatic himself
would have provided for the support of such person if he had been
of sound mind, so as to be legally competent to do so.   The case
of The Earl of Carysfort, (Craig & Phil. Rep. 76,) is a strong
case in favor of the jurisdiction of the court of chancery to direct
such a provision to be made.   For in that case the lord chan-
cellor allowed a retiring pension, out of the income of the estate
of the lunatic earl, to an old personal servant; merely because
he was satisfied that the earl himself would have approved of
such an allowance if the loss of his reason had not deprived
him of the power to act for himself.

In the case under consideration, the lunatic, when in the full
possession of all his faculties, placed himself in the situation of

In the matter of Heeney.

a father to the two young ladies mentioned in the petition, and supported them as members of his family and sent them to a boarding school; where one 'of them completed her education and has again returned and become a member of his family, leaving the other still at school. I have no doubt, therefore, that if Mr. Heeney had retained the full possession of his faculties he would have continued to support them in the same way while they remained unmarried. I shall therefore but carry out his undoubted intentions, by directing the committee to let these two young ladies remain in the family and be supported as they have heretofore been, until their marriage, or the death of the lunatic, or the further order of the court. The committee must also continue the one who has not yet finished her education, at the boarding school for the same length of time that her sister was continued there by the lunatic, and pay the same allowance for her education, &c., out of the income of the lunatic's estate. And generally, the committee is to provide for the keeping up of the lunatic's family establishment, with the same number of domestics, for his comfort and convenience, that he has heretofore employed before his lunacy, and to expend for that purpose such sums as may be necessary, not exceeding the annual amount of $2000, mentioned in the petition. And if increasing infirmity should require a greater expenditure for the comfort and support of Mr. Heeney and his family, the committee is to be at liberty to apply for a further allowance for that purpose.

I cannot authorize the committee to be the almoner of the general charities of the lunatic; but so long as Mr. Heeney himself is competent to judge as to the probable claims of those who may call upon him for small donations, for temporary relief from want and suffering, the committee is to place at his disposal, in small sums, an amount not exceeding $100 per annum, to be disposed of for that purpose in such way as Mr. Heeney may deem fit. The committee is also authorized and directed to allow and pay to the surviving sister of the lunatic the annuity of $250, in quarterly payments, which she has heretofore been accustomed to receive from her brother, out of the income of his estate; and to pay her physician's bills and

such other occasional sums as her brother has been in the habit of giving her from time to time, not exceeding $150 per annum.

It also appears to be proper that the committee should be directed to allow to the three aged ladies, whose family name was Fullard, who have been so long sustained by the lunatic's bounty, the same allowance which Mr. Heeney was in the habit of making to them, respectively, as fixed allowances; and that he should be directed to pay the arrears of such allowances for the time they have been suspended by the incapacity of the lunatic. The committee is also to be authorized to pay for the support of the institutions of religion, in the church where Mr. Heeney and his family were accustomed to worship at the time his mental faculties became impaired, such sums, from time to time, as Mr. Heeney may desire him to pay, not exceeding the amount which the lunatic had been accustomed to pay annually for the two or three years immediately preceding the time from which he is found by the inquisition to have been of unsound mind; not exceeding the annual sum of $100.

The committee is to be directed to pay the note stated to have been endorsed by Mr. Heeney to pay the board and tuition of the two young ladies brought up in his family. And the payment of the note given for the assessments, upon the lunatic's property, is sanctioned by the court. But the two notes endorsed by the lunatic for Michael Dunn, and which endorsements are overreached by the finding of the jury, are not to be paid by the committee without further order. But the holders of such notes are to be left to apply to the supreme court, in equity, for the payment of such notes by the committee, upon due notice of the application to him, if they cannot be collected from the maker of such notes; provided such holders can show that in equity the lunatic's estate should be charged with the payment thereof.

The committee is also to be authorized to compromise the suit of James Heaney and William Heaney, mentioned in the petition in this matter, on such terms as he may deem reasonable. And he is directed to pay the amount of the verdict and costs in the suit brought by Thomas Billsland, without further

litigation. But the chancery suit brought by Mr. Heeney against Michael Dunn, the committee is directed to prosecute until he shall become satisfied that there is no probability of his being able to bring the same to a successful termination, or until the defendant therein shall offer such terms of compromise as the committee shall deem it for the interest of the lunatic's estate to accept; in which case he is at liberty to compromise and settle the said suit, with the defendant therein.

The committee is also to be at liberty to advance such sums as may be necessary, out of his own funds, to meet payments which should be made immediately, and which the moneys of the lunatic, in his hands, are insufficient to pay ; and to retain the amount of such advances, with the legal interest thereon, out of the future income of the estate, or out of the proceeds of the personal estate in his hands.